**UNITED STATES OF AMERICA,**

*ex rel*. **ABC,**

       **Plaintiff,**

**V.**                                                                          **Case No.**


**DEF and others**                                            **Jury Trial Demanded**

                                                 **Filed Under Seal**
                                                 31 U.S.C. § 3730(b)(2)

       **Defendants.**


**COMPLAINT**
**Claims Pursuant to the False Claims Act, 31 USC sec. 3730**

**[FILED IN CAMERA AND UNDER SEAL]**

**UNITED STATES OF AMERICA,**
*ex rel.* **PAUL INZEO,**

        **Plaintiff,**                  **Case No.**

    **v.**

                                     <u>**Jury Trial Demanded**</u>

**INDUSTRIES FOR THE BLIND, INC.,**
**CHARLES "CHUCK" LANGE, KAREN**
**WALLS, DEBORAH LUCAS, RICHARD**
**WEIGOLD AND CHARLES "CJ" LANGE**    **Filed Under Seal**
                                         31 U.S.C. § 3730(b)(2)

        **Defendants.**

## COMPLAINT
### Claims Pursuant to the False Claims Act, 31 USC sec. 3730, et seq.

The United States of America, by and through *qui tam* originating relator Paul Inzeo ("Relator" or "Inzeo"), hereby brings this action pursuant to the False Claims Act ("FCA"), as amended, 31 U.S.C. § 3729 et seq., by and through his attorneys, Brian H. Mahany, Brian D. Parish and the Law Firm of MahanyLaw, and hereby declares the following to recover all damages, penalties, and other remedies available as established by the FCA which were caused by Defendants' repeated and deliberate submissions of false, fraudulent and intentionally deceptive records, claims, statements and representations, used and caused to be made, used and relied upon by the United States Government under the U.S. AbilityOne Commission laws and regulations.

### <u>SUMMARY</u>

1. This case involves the exploitation of the blind and severely disabled. Industries for the Blind, Inc. ("IBI") is one of hundreds of not-for-profits that is authorized to manufacture blind and severely disabled made products for use by the government. Along the way, IBI became lost and

2

began to simply purchase cheaper goods in the People's Republic of China and other places and pass them off as being made by disadvantaged workers. Instead of providing opportunities for the blind and disabled, IBI has exploited them and used them to expand their business into one that has generated nearly half a billion dollars is gross revenues over the last five years according to 2013 IRS filings. This is no ordinary nonprofit organization.

2.   A similar case was filed in 2012, Case No.: 12-cv-00813-PJG, by the relator. That case was voluntarily dismissed (without prejudice) so that the relator could continue to investigate. After years of further investigation and working with government officials, this complaint is filed. As noted in more detail below, the United States government has now launched its own investigation into the entire blind made product procurement system and how it exploits the blind and disabled. IBI is one of the largest "producers" of these products.

3.   Earlier this month, published reports indicated that hundreds of supporters of those with disabilities marched on Capitol Hill in Washington, D.C. Many of those supporters are demanding that the government overhaul its system for helping the blind and disabled find employment opportunities. CNN reports the Justice Department and at least four agency inspectors general are investigating widespread corruption in the procurement system for blind made products, a system in which IBI is a key component.

4.   Instead of providing the much needed employment and training opportunities for America's blind and severely disabled that Congress strived to accomplish, IBI and its officers (the individual defendants) have orchestrated a complex scheme designed to mislead the United States government and American taxpayers and further deprive the blind and already disabled, all while enriching themselves by exploiting their established position as certified contractors of blind made products.

3

## INTRODUCTION

5. In 1938, the Wagner - O'Day Act (JWOD), 41 U.S.C 8501-8506 was passed under President Franklin D. Roosevelt to provide employment opportunities for people who are blind. The law was amended in 1971, the Jarvis -Wagner - O'Day Act (the "Act"), to include people with severe disabilities and to allow the program to provide products and services to the Federal government.

6. The Act expresses that it is the policy of the United States Government to increase employment and training opportunities for persons who are blind or have other severe disabilities through the purchase of commodities and services from qualified nonprofit agencies employing persons who are blind or have other severe disabilities. 41 C.F.R. 51-1.1(a).

7. Today, the Act is administered as the AbilityOne Program through the U.S. AbilityOne Commission ("Commission"). The Commission itself is an independent Federal agency consisting of fifteen members appointed by the President of the United States.

8. These fifteen Commission members, *inter alia*, vote upon and establish proposed additions to the list of supplies (including military resale commodities) and services that the Committee has determined are suitable for purchase by the Government under the 41 U.S.C. chapter 85, the "Procurement List." This Procurement List covers goods and services needed by the Federal government ranging from everything from secure document destruction for the IRS to serving meals to troops, and everything in between.

9. The Commission seeks to accomplish its mission through the assistance of two central nonprofit agencies (CNAs): the National Industries for the Blind (NIB) and SourceAmerica (SA) (formerly known as the National Industries for the Severely Handicapped, or NISH). These CNAs assist the Commission by working to match government contracts for goods and services needed

4

with local nonprofit agencies (NPAs) or Contractors across the United States that train and employ people with disabilities in the creation, manufacture and supply of goods and services. These products and services are known as AbilityOne products and services, and most often carry the trademark name of SKILCRAFT. Collectively, the Commission, NIB and SA claim to assist in providing quality products and services at fair market prices to the Federal Government while helping to employ more than 45,000 Americans who are blind and/or have significant disabilities, including some 3,000 veterans.

10. Pursuant to 41 C.F.R. § 51-1.3, to be an eligible Contractor for the supply of AbilityOne government goods or services under the AbilityOne program, the goods manufactured and services provided under the program must be primarily produced through the direct labor of the blind or severely disabled. While qualifying agencies may subcontract a small portion of the work, these agencies must first make proper, complete, and appropriate disclosures to the Commission, NIB or SA, and then receive the express consent, approval, and cooperation of the appropriate governmental agency. *Id.*

11. Once a product or service is added to the AbilityOne Procurement List, that product or service becomes a mandatory purchase for Federal employees pursuant to 41 U.S.C. § 46-48c, as implemented by Federal Acquisition Regulation 8.7 (FAR 8.7), and the local NPA becomes the sole-source contract provider for that item for as long as the agency requirement exists and the local NPA can provide it. *See* FAR 6.302-5 and 8.002.

12. FAR 52.208-9(a) dictates that Contractors providing mandatory products and services for use by Federal Government personnel must include the appropriate AbilityOne products, and FAR 52.208-9(b) prohibits Contractors providing AbilityOne products and services from purchasing the required product or service from third-party sources unless and until: (1) the

Contractor has notified the requesting Governmental agency or authority that they are incapable of providing the requested product or service of suitable quality or within the required time period for fulfillment; and (2) the requesting agent has notified the Contractor that the Committee or a JWOD central nonprofit agency has authorized purchase from other sources.

13. Presently, there are nearly 600 nonprofit agency Contractors spread out across the United States that claim to employ blind and/or severely disabled persons for the manufacture and supply of quality goods and services for the United States Government pursuant to the AbilityOne program. Defendant IBI is one such entity.

14. In its capacity as an AbilityOne Contractor, IBI sells tens of millions of dollars' worth of products allegedly manufactured, constructed and/or assembled by the blind to numerous U.S. governmental agencies, institutions, branch offices, and government employees and troops every year. Through its website and other public mediums, IBI openly declares:

> Industries for the Blind, Inc. – Milwaukee was originally founded as a manufacturing company, employing blind and visually impaired individuals for the production and assembly of brooms and brushes. Now, more than 60 years later, we've expanded our range of services and products beyond manufacturing to include product fulfillment and product development. Our 100,000 square-foot, environmentally-friendly manufacturing facility employs visually impaired individuals, producing a wide variety of products.

15. Seeking to capitalize on its status as an established AbilityOne Contractor under the AbilityOne program, and thereby obtain a larger market share of the "blind-made goods" industry, IBI began opening base supply stores located on four separate U.S. Military installations in 1998: Homestead Air Force Base; Malmstrom Air Force Base; Vandenberg Air Force Base; and Beale Air Force Base.

16. In 2004, IBI moved to further expand its reach in the blind-made goods industry as an AbilityOne Contractor with the launch of BaseSupplyStores.com, thereby propelling itself into

worldwide e-commerce. BaseSupplyStores.com was renamed IBEXP.com in or around 2010. Recently, it appears that IBEXP.com was also renamed and now carries the name ibSupply.com.

17. Between 2005 and 2013, IBI's efforts to capitalize on the AbilityOne program ramped up. IBI opened five additional supply stores located on either U.S. Military or Federal Building installations around the United States: Hill Air Force Base, Fort Detrick Army Base, Patuxent Naval Air Station, a second Vandenberg Air Force Base location and the AbilityOne Base Supply Center in the Barnes Federal Building located in Boston. Additionally, IBI managed to sell 4.5 million pencils to the Federal government, added the SKILCRAFT Professional paint brush and accessory line for sale to Federal customers and launched Ibcorrectionalsupply.com to support the Federal Bureau of Prisons with the purchase and sale of AbilityOne products.

18. According to its 2013 IRS form 990, this allegedly qualified nonprofit reported grossed revenues of on half a billion dollars in the last five year, much of that being garnered from goods certified under the AbilityOne regulations as manufactured by the blind and/or severely disabled.

19. The sad reality is that many of the goods so certified were and are actually manufactured outside the United States, namely in the People's Republic of China and Taiwan, by people who are and were neither blind nor severely disabled, all in violation of federal law and of the individual federal procurement contracts.

<u>**JURISDICTION AND VENUE**</u>

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Plaintiff-Relator establishes subject matter jurisdiction under 31 U.S.C. § 3730(b).

7

21. Under 31 U.S.C. § 3730 (e), there has been no statutory relevant public disclosure of the allegation or transactions in this Complaint with respect to which Plaintiff-Relator Inzeo is not an "original source," and all material information relevant to this Complaint was provided to the United States Government prior to filing his Complaint pursuant to 31 U.S.C. § 3730(e)(4)(B).

22. This Court has personal jurisdiction over the Defendants and is a proper venue pursuant to 28 U.S.C. § 1391 (b) and 31 U.S.C. § 3732(a). Moreover, each of the Defendants resides, works and/or has a principal place of business in this District.

## THE PARTIES

23. Plaintiff-Relator Paul Inzeo ("Inzeo") is a resident of Waukesha, Wisconsin and was previously employed as a marketing manager by Defendant IBI. He was originally employed by IBI in June of 2007 and worked there continuously on a fulltime basis until April of 2013. While employed there, Inzeo witnessed the fraud alleged in this Complaint and is the original source of this information. Following the discovery of the ongoing fraud discussed herein, Inzeo caused a *qui tam* action to be filed on August 9, 2012 in the United States District Court for the Eastern District of Wisconsin, Case No. 12-cv-00813-PJG. Inzeo subsequently caused a Motion for Voluntary Dismissal of that action to be filed on August 9, 2013 in order to conduct further investigation into the factual circumstances surrounding those claims and those recited herein. The case was voluntarily dismissed without prejudice on August 15, 2013. The present action is a refiling of that original *qui tam* action as a result of further investigation and the discovery of additional supporting information and facts.

24. Defendant Industries for the Blind, Inc. ("IBI") is a not-for-profit agency ostensibly established to provide opportunities for the blind and visually impaired. Its principal place of business is 445 S. Curtis Street, West Allis, Wisconsin.

8

25. IBI was originally established in 1948 by Paul Fryda, a local Milwaukee businessman whose brother was blind and could not find work. According to its website and literature, 80 percent of the company's workforce is blind or visually impaired. Upon information and belief, however, the actual percentage is much smaller.

26. Defendant Charles "Chuck" Lange ("Lange Senior") is a resident of West Bend, Wisconsin and served as IBI's President until early 2015.

27. Defendant Deborah Lucas ("Lucas") is a resident of Pewaukee, Wisconsin and serves as IBI's Vice President of Product Development.

28. Defendant Richard Weigold ("Weigold"), upon information and belief, is a resident of Waterford, Wisconsin and serves as IBI's Senior Vice President of Manufacturing.

29. Defendant Karen Walls is a resident of Waukesha, Wisconsin and served as IBI's Chief Financial Officer until early 2015. Walls previously served as president of the National Association for the Employment of the Blind, an advocacy group promoting the employment of visually impaired workers.

30. Defendant Charles "CJ" Lange ("Lange Jr.") is the son of Charles "Chuck" Lange and served as IBI's Vice President of Sales and Marketing until assuming the mantle of President of IBI in early 2015.  Lange Jr. lives in Hartford, Wisconsin.

31. In addition to their duties as officers of Industries as described above, Lange Senior, Lucas and Walls also served as Directors on IBI's Board of Directors.

32. IBI is the recipient of and holds numerous government contracts through its participation as an AbilityOne certified agency, and three separate General Service Administration schedules ("GSAs"). IBI manufactures a wide variety of goods for purchase by the U.S. government and its agencies. Some of those goods such as pens, pencils, brushes and brooms are

actually manufactured in part by the blind and/or severely disabled. The majority of its AbilityOne certified goods, however, including, but not limited to, clothing for the nation's armed forces, Economy Pencils, the SKILCRAFT Press and Roll Adhesive Film Dispenser, the SKILCRAFT Press and Roll Corrective Tape, census bags for the U.S. Census Bureau, personal hygiene products for the Bureau of Prisons, the SKILCRAFT Tub & Shower Scrubber and an entire host of SKILCRAFT Professional Paint Supplies, Brushes and Accessories, are either made outside the United States or made by individuals that are neither blind nor severely disabled and then relabeled, repackaged, and rebranded as products manufactured or assembled by the blind and/or severely disabled under the AbilityOne program.

33. According to government regulations, the Act "mandates that commodities or services on the Procurement List required by government entities be procured, as prescribed in this regulation, from a nonprofit agency employing persons who are blind or have severe disabilities, at a price established by the Committee [NISH]... Except as provided in paragraph (b) of this section [Federal Prison Industries], the Act has priority, under the provisions of 41 U.S.C. 48, over any other suppliers of the government's requirements for commodities and services on the Committee's Procurement List." 41 CFR § 51-1.2(a).

34. Products made by the blind and/or severely disabled under the auspices of the Commission often carry the logo "SKILCRAFT" and/or "AbilityOne" signifying that the product is made by the blind or severely disabled and approved by NIB and/or the Commission.

35. In order to manufacture and sell goods for purchase by the Federal government, IBI must first apply for a National Stocking Number or NSN. The company proposes the type of product it intends to make and specifies how the blind and/or severely disabled will be utilized in its manufacture. Once the product and the involvement of the blind and/or severely disabled is

approved by the Commission, the NSN number is issued, the product is approved to carry one or both of the logos ("SKILCRAFT" or "AbilityOne") and the product is added to government Procurement List.

36. The core criterion for certification by the Commission is that 75 percent of total direct labor hours must be performed by people who are blind and/or severely disabled. *See* 41 U.S.C. § 8501(7)(b) and (c).

37. IBI is believed to have dozens of contracts with many federal agencies. The contracts discussed below are merely illustrative of the widespread fraud taking place at IBI and being perpetrated against the United States Government and government employees throughout the United States. Upon information and belief, IBI has and continues to exploit its position as an AbilityOne Contractor in order to increase its annual sales and revenue to and from the United States Government by way of sales of not only AbilityOne goods and products, but also non-AbilityOne compliant products by way of GSA contracts procured as a result of being an AbilityOne Contractor. In essence, IBI has been and continues to be engaged in the process of using and exploiting America's blind, severely disabled and wounded veterans as a conduit to obtain large Government contracts and Government monies that have nothing to do with serving America's blind and/or severely disabled.

**Census Bags**

38. On December 13, 2008, the United States Census Bureau placed an order with IBI for census bags. The total amount of that contract was $9,645,750. That contract was part of an

Case 2:15-cv-00996-WED   Filed 08/20/15   Page 11 of 22   Document 1

AbilityOne procurement program and was designated as being acquired from a nonprofit agency employing people who are blind and/or severely disabled.

39. Subsequently, the Census Bureau placed follow-up orders with IBI, including an order on April 15, 2010 totaling $498,960. Collectively, these purchase orders accounted for approximately $30,000,000 in gross sales by Industries to the Department of Commerce.

40. The goods purchased by the Census Bureau were in fact not made by the blind or severely disabled. Nor were they made in the United States. Rather, the goods were contracted to a company in the People's Republic of China without the prior consent and/or approval of the AbilityOne Commission or the appropriate CNA and the entire purchase and supply process was carried out without the prior approval and/or cooperation of the AbilityOne Commission or appropriate CNA.

41. Inzeo observed employees of Industries removing the census goods from boxes, removing indicia showing the goods were made in China and repackaging them in boxes purporting to show that the goods were made by the blind and in conformance with AbilityOne regulations. These actions were photographed.

**AmeriCorps Contract**

42. In addition to the contract with the Census Bureau, IBI has a contract with AmeriCorps to produce clothing.

43. AmeriCorps is a federal government program and part of the Corporation for National & Community Service. The program was created through the National and Community Service Trust Act and signed into law by President Clinton in 1993. It follows legislation and predecessor entities (VISTA) created by Congress in 1964.

12

44. The contracts and purchase orders from AmeriCorps specify and identify that the clothing manufactured by IBI for the agency is being done so under the business classification of AbilityOne. The clothing is neither being manufactured by an AbilityOne Contractor, nor is it being manufactured by the blind or severely disabled at all. Upon information and belief, the clothing is manufactured in China and other foreign countries and embroidered or silk screened by Top Promotions, a for-profit company located in Middleton, Wisconsin that does not employ the blind or severely disabled. Top Promotions is an affiliate of Defendant IBI.

## Defense Department Procurement

45. IBI also produces clothing for the U.S. Department of Defense, specifically for the U.S. Coast Guard and Air Force. Upon information and belief, IBI provides the military approximately $7,000,000 to $11,000,000 in goods per year, the majority of which are certified as AbilityOne made but few, if any, are actually made in compliance with the certifications, regulations or the Act.

## Other Products

46. With the exception of a few pens, brooms, paint rollers and paint roller naps, virtually all the products "made" by IBI and carrying the AbilityOne or SKILCRAFT logo, including numerous paint brushes and supplies and accessories, are not manufactured by the blind or disabled, and in many instances, are actually manufactured by foreign workers, then imported to the United States and repackaged as goods either manufactured by IBI or assembled by IBI. Regardless of this reality, IBI continues to sell and supply many of these items and products to the government with NSN numbers.

47. For instance, IBI presently sells and supplies "Economy Pencils" with the NSN number of 7510014519176 even though these pencils are not manufactured by the blind or severely

13

disabled at all, but are believed to be manufactured in Taiwan and then imported to the United States though a California corporation, purchased by IBI and then bagged and sold as though they are manufactured by IBI in conformity with the AbilityOne program.

48. A similar process is further employed by IBI in relation to products bearing NSN numbers of 8040015964255 and 7510015048940, among numerous others. Although IBI does employ some visually impaired workers, many were terminated in recent years and replaced with nonunionized day workers. Managers employed by IBI stated that the blind workers were "too slow."

49. A company that once provided meaningful employment opportunities for the blind and severely disabled now only employs a few as token workers. Often blind workers are used to simply repackage foreign made goods to falsely claim they are "assembled" in the U.S. and made by blind workers.

50. By falsely using the certification (AbilityOne and SKILCRAFT) reserved for blind and severely disabled workers, IBI is actually taking away employment and training opportunities for such workers and deceiving the United States government and American taxpayers in the most shameful and despicable fashion.

## FIRST CLAIM FOR RELIEF
### Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(A) and (B)

51. Inzeo incorporates by reference each of the preceding paragraphs of this Complaint.

52. This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729 et seq., as amended.

53. By virtue of the acts described above, the Defendants knowingly presented or caused to be presented false or fraudulent claims, records or other materials for payment which resulted in countless millions of dollars of payments of false claims by the government to the Defendants. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(A), as amended.

54. By virtue of the acts described above, the Defendants also knowingly made, used or caused to be made or used, false records and statements material to a false or fraudulent claim which resulted in millions of dollars of payments of false claims by the United States Government to the Defendants. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(B), as amended.

55. The acts described above induced the United States Government to pay or approve such false or fraudulent claims.

56. Every such payment by the United States to the Defendants for goods that were certified or represented to be made by the blind or severely disabled in accordance with AbilityOne regulations and/or made with the AbilityOne or SKILCRAFT logos and trademarks was a product of a false claim and materially false statements made by Defendants.

57. Because of their fraudulent conduct, the Defendants are ineligible for payments because they, with knowledge and design, were not and are not in compliance with the Act, regulations, Commission or NISH regulations and rules and are further not in compliance with the various purchase orders requiring use of blind-made products or products manufactured by the severely disabled.

58. In reliance on these false representations and claims, the United States Government, by and through its intermediaries, paid countless millions of dollars for products that it otherwise

would not have purchased from Defendants had the government been aware of Defendants' knowing violations of the FCA, the Jarvis - Wagner - O'Day Act and the various rules and regulations of the AbilityOne Commission, NISH and NIB.

59. By reason of Defendants' acts, the United States has been damaged and continues to be damaged in substantial amounts to be determined at trial.

60. Pursuant to the FCA, IBI is liable to the United States for treble damages and a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein, plus three (3) times the amount of damages which the United States has sustained because of Defendants' actions.

## SECOND CLAIM FOR RELIEF
### Violations of the False Claims Act 31 U.S.C. § 3729(a)(1)(C) – Conspiracy

61. Inzeo incorporates by reference each of the preceding paragraphs of this Complaint.

62. Defendants Charles "Chuck" Lange, Deborah Lucas, Karen Walls, Richard Weigold and Charles "CJ" Lange conspired with one another and IBI to win contracts with the United States Government through a series of fraudulent and false misrepresentations that violate the FCA as set forth above in 31 U.S.C. § 3729(a)(1)(c).

63. In furtherance of the conspiracy, the Defendant-conspirators agreed to present false records and statements to the United States that would have a material effect on the United States Government's decision to pay for the contested items herein.

64. The Defendant-conspirators intentionally or knowingly made false statements to various federal agencies, forged documents and certifications, discussed ways to make foreign made goods appear to be made by the blind and/or severely disabled in conformity with AbilityOne guidelines, affixed AbilityOne and SKILCRAFT logos to goods not made in compliance with

16

those programs and regulations and took steps to actively conceal the origin of goods sold to the government.

65. Without limitation, the following are specific acts taken by each of the individual defendants in furtherance of the conspiracy:

A. Lange Senior signed procurement orders and contracts on behalf of IBI certifying goods as being made in accordance with AbilityOne laws and regulations, all while having actual knowledge that they are not in compliance.

B. Lange Senior instructed all managers to conceal information related to the source of census bags, clothing and other goods and falsely stated to the government and media how the products were made in the United States by blind and/or disabled workers.

C. Lucas orchestrated the contracts for the manufacture of the census bags for the Census Bureau and other items for other governmental agencies and arranged for the bags and other items to be manufactured in and purchased from the People's Republic of China, Taiwan and other places at a much lower price than if the bags and items were actually made by IBI utilizing blind and/or disabled workers in the United States.

D. Lange Senior, Lucas and Weigold arranged for blind and disabled workers at IBI to remove the census bags and other materials and items from the packaging showing true place of origin and repackage these items so as to give the impression that the items were made by blind and disabled workers in the United States.

17

E.  Lucas produced false documentation and provided the same to the Census Bureau and other governmental purchasers which falsely documented that the items were made pursuant to AbilityOne regulations.

F.  Lange Senior and Lange Junior conspired to deliver falsely labeled goods to Womack Army Hospital at Ft. Bragg, North Carolina and other locations and base stores, knowing that the goods were not blind made or made by the severely disabled despite the fact that these items often falsely carried the AbilityOne and/or SKILCRAFT logos.

G.  Walls served as Lange Senior's Chief Financial Officer and the defacto "number two" person at IBI. She utilized her position to conceal the real source of many of the goods falsely certified as blind made by IBI. Working closely with Lange Senior, the two "paid off" workers who vocalized concerns about the fraud within the company. By being a former president of the National Association for Employment of the Blind, she used her connections to lend legitimacy to what is in essence a criminal enterprise.

H.  Walls orchestrated the purchase of Top Promotions to allow IBI to fulfill clothing contracts to the military and claim the same as being blind made. In fact, Top Promotions employs no blind workers.

I.  Lange Jr., first as sales and marketing vice president and now as President, plans and directs the company's advertising and packaging to push and promote IBI's "blind made" products, knowing full well that many, if not most, such products are imported from overseas and provide little or no employment opportunities for blind and/or severely disabled Americans.

J. Weigold oversees all "manufacturing" operations at IBI. He is responsible for insuring that the goods sold to the United States as AbilityOne meet the legal requirements of the Act and regulations. Weigold is the interface with NIB and NISH and is responsible for all requests for certification of new products and issuance of NSN numbers.

K. Weigold is responsible for packaging all materials "produced" by IBI and falsely labels such products as having a point of Origin in West Allis, Wisconsin (when in fact the point of origin is outside the United States) and falsely labels products as made in accordance with AbilityOne or SKILCRAFT blind-made standards.

L. The senior managers at IBI openly brag about making money and circumventing government procurement laws and regulations. Although not direct evidence of fraud against taxpayers, Lucas' conduct in procuring contracts with Wal-Mart for cards and pens purported to be made by the blind is a further example of the extent of the corrupt culture that now exists within senior management at IBI.

M. While blind workers are actually being laid off by IBI and replaced by non-disabled, non-visually impaired day workers, these managers have seen huge salary and bonus payments over the last five years. By not providing much needed employment to the blind, these individuals are instead outsourcing goods to foreign workers, lying to the government and enriching themselves.

66. The United States, unaware of the falsity and fraudulent nature of Defendants conduct, paid countless millions of dollars to Defendants for products it would not have been purchased had

19

the government been aware of Defendants' knowing violations of the FCA, the Jarvis - Wagner - O'Day Act and the various rules and regulations of the AbilityOne Commission, NISH and NIB.

67. By reason of Defendants' acts, the United States has been damaged and continues to be damaged in substantial amounts to be determined at trial.

68. Pursuant to the FCA, Lange Senior, Lange Junior, Lucas, Walls and Weigold are liable to the United States under the treble damage and civil penalty provisions for a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein, plus three times the amount of damages which the United States has sustained because of the defendants' actions.

## SUMMARY

69. Industries for the Blind, Inc. began as a true nonprofit with a goal to provide employment opportunities for the blind. Over the last several years, the small nonprofit has become a multi-million dollar company that has lost its way. It has become a virtual criminal enterprise designed to enrich its officers at the expense of the very people it was created to help.

70. With the exception of a handful of blind workers who still assemble pens and brooms, virtually all the products made by IBI are manufactured outside the United States by foreign workers or at other locations without the aid of the blind or severely disabled. Almost every invoice and bill of sale submitted by IBI to the government is a false claim. Countless millions of dollars have been paid to IBI under the mistaken belief that the company was employing the blind and severely disabled to make products for the government. The payments received by IBI were obtained through outright fraud and deceit. Because such fraud violates the FCA, Industries for the Blind, Inc. is liable to the government and needs to be held accountable to the American taxpayers for its actions.

20

71. Simply put, IBI has made a mockery of a program designed by Congress to help thousands of blind and severely disabled Americans.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, the United States of America, through Relator Inzeo, requests the Court for entry of judgment against Defendants and the following relief:

A. That Defendants cease and desist from further violations of the False Claims Act, 31 U.S.C. § 3729 et seq., and the related AbilityOne laws and rules;

B. That the Court enter judgment against the Defendants in an amount equal to three times the amount of damages suffered by the United States because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each false claim or certification;

C. That Inzeo be awarded the maximum amount allowed pursuant to section 3730(d) of the False Claims Act;

D. That Inzeo be awarded all costs of this action, including attorneys' fees, costs and expenses pursuant to 31 U.S.C. § 3730(d); and

E. That the United States and Inzeo be granted such further relief as the court deems equitable, just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, a jury trial is demanded.

Respectfully submitted on this 20th day of August, 2015.

Mahany & Ertl, LLC

By: /s/    Brian H. Mahany
       Brian H. Mahany
       Brian D. Parish
       P.O. Box 511328
       Milwaukee WI 53203
       (414)223-0464
       brian@mahanylaw.com
       bparish@mahanylaw.com
       Attorneys for Plaintiff Relator
       Attorneys for Plaintiff